UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONALD F. KING, Trustee for the Bankruptcy estate of William & Douglas Partners Inc., | CASE NO. 2:25-cv-01002-JNW |
| Plaintiff, | ORDER DENYING DEFAULT JUDGMENT |
| v. | |
| TEIKAMETRICS INC., | |
| Defendant. | |

## 1.  INTRODUCTION

This matter comes before the Court on Plaintiff Donald King's second motion for default judgment. Dkt. No. 21. Having reviewed the motion, the relevant record, and all supporting materials, the Court DENIES the motion without prejudice.

## 2.  BACKGROUND

King is the Chapter Seven trustee for the bankruptcy estate of William & Douglas Partners Inc. ("William & Douglas"). Dkt. No. 1 at 1. Before it declared bankruptcy, William & Douglas sold "thousands of holiday and pop-culture-themed party, decoration, décor, apparel, and toy products" as a third-party seller on

ORDER DENYING DEFAULT JUDGMENT - 1

Amazon *Id.* ¶ 8. Other third-party sellers offered many of the same products. Defendant Teikametrics Inc. is a Boston-based company and self-proclaimed Amazon advertising expert that provides digital advertisement management services to Amazon sellers. *Id.* ¶¶ 25, 27.

In December 2020, Teikametrics told William & Douglas that Amazon DSP— a demand-side platform—was an appropriate and effective advertising tool for third-party sellers like William & Douglas to link potential customers directly to its product listings. *Id.* ¶¶ 28–30. On January 4, 2021, William & Douglas and Teikametrics entered a contract for Amazon DSP management services ("the Contract"). *Id.* ¶ 34.

Several months later, William & Douglas learned that Amazon DSP is "seller agnostic: an Amazon DSP advisement links potential customers to specific Amazon product listings but not specific sellers." *Id.* ¶ 2. Accordingly, Teikametrics' services did not drive potential customers exclusively to William & Douglas and the return on adverting spend metrics it reported "included thousands of products that William & Douglas not only did not sell exclusively but also did not sell at all." *Id.* William & Douglas told Teikametrics that it wanted to terminate the Contract on July 4, 2022. *Id.* ¶ 48.

King sued Teikametrics, alleging six causes of action: fraud, negligent misrepresentation, breach of contract, breach of implied covenant of good faith and fair dealing, breach of a separate video-based contract ("the Video Contract"), and unjust enrichment. Teikametrics failed to appear or answer King's complaint despite proper service, and the Clerk of Court entered default. Dkt. No. 13. The

ORDER DENYING DEFAULT JUDGMENT - 2

Court denied King's first motion for default judgment for lack of evidence. Dkt. No. 19.

King now moves for default judgment for a second time, seeking $622,946.91. Dkt. No. 23 ¶ 15. The amount includes the $539,445.99 paid to Teikamtrics under the Contract, and $83,500.92 in prejudgment interest (based on per diem interest of $69.76). *Id.* ¶¶ 12–14.

## 3. LEGAL STANDARD

Before entering a default judgment, a court must confirm that it has jurisdiction. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If jurisdiction is satisfied, courts consider the *Eitel* factors to decide whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Courts usually take the second and third factors together, asking whether the plaintiff has made out a prima facie case on their claims. *Waters v. Mitchell*, 600 F. Supp. 3d 1177, 1183 (W.D. Wash. 2022). At the default judgment stage, the court accepts the complaint's well-pleaded factual allegations as true, but not its allegations about damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).

ORDER DENYING DEFAULT JUDGMENT - 3

## 4. DISCUSSION

### 4.1 The Court has jurisdiction over this action.

The Court has diversity jurisdiction under 28 U.S.C. § 1332. William & Douglas was a corporation with its principal place of business in Virginia. Dkt. No. 1 ¶ 6. Teikametrics is a corporation with its principal place of business in Massachusetts and the amount in controversy exceeds $75,000. *Id.*

The Court also has personal jurisdiction over Teikametrics because Teikametrics' contract with William & Douglas contained a forum-selection clause naming Washington. *Id.* ¶ 7; Dkt. No. 1 at 23. *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (finding a forum-selection provision is a legal arrangement by which a litigant may consent to the personal jurisdiction of the court).

### 4.2 The *Eitel* factors weigh against default judgment.

At issue here are the second and third *Eitel* factors. They ask whether King has stated a claim he could win on. He has not—not on any of his six theories. That failure defeats the motion by itself, so the Court does not reach the other five factors.

First, King's fraud claim fails to satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *N. Seattle Health Ctr. Corp. v. Allstate Fire & Cas. Ins. Co.*, No. C14-1680JLR, 2016 WL 4533055, at *3 (W.D. Wash. Jan. 27, 2016) (listing cases). Rule 9(b) applies in the context of a motion for default judgment. *See Sophia v. Myicis*, No. C 07-02364 SI, 2008 WL 5411479, at *2 (N.D.

ORDER DENYING DEFAULT JUDGMENT - 4

Cal. Dec. 29, 2008) (stating that "[p]leading requirements [under Rule 9(b)] should be enforced strictly" in claims for default judgment). A plaintiff must plead the "who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation modified). And "where fraud has allegedly been perpetrated by a corporation, the pleader must allege the names of employees or agents who purportedly made the fraudulent representations or omissions, or at a minimum identify them by title or job responsibilities." *N. Seattle Health Ctr. Corp.*, No. C14-1680JLR, 2016 WL 4533055, at *3. King does neither. He does not name the people at Teikametrics who made the statements he calls fraudulent, and he does not identify them by title or job. His complaint never answers the "who."

Second, as to King's negligent misrepresentation claim, the complaint does not address the general principal that "one cannot rename a claim for disappointed contractual expectations as a negligent misrepresentation claim." § 19:14. Negligent misrepresentation—Application of independent duty doctrine, 16A Wash. Prac., Tort Law And Practice § 19:14 (5th ed.). Under the independent duty doctrine, "[a]n injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract. *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 243 P.3d 521, 526 (Wash. 2010) (quoting *Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1262 (Wash. 2010)). He points to no duty that exists apart from the Contract. His negligent misrepresentation claim is his contract claim under a different name.

ORDER DENYING DEFAULT JUDGMENT - 5

Third, King does not allege that Teikametrics breached an express contractual duty. King relies on the following contract terms under the "Services Provided," "DSP Advertising Reporting, Insights[,] & Analytics" section of the contract:

> Track and report on revenue and efficiency at campaign and audience level KPIs.

> Deliver executive summary to include standard performance metrics, focusing on KPIs, to provide custom insights and recommendations.

Dkt. No. 1 at 23 (emphasis in original). From those two lines, King reads a promise to direct "customers only to William & Douglas' Amazon product listing," and generate "direct sales only for William & Douglas, not its competitors[.]" *Id.* ¶ 74.

The terms do not say that. They require Teikametrics to track and report revenue and efficiency, and to deliver a summary of performance metrics with insights and recommendations. Neither promises exclusivity. King's own complaint explains why they could not: third-party sellers like William & Douglas cannot rely "on Amazon DSP advertisements to link potential customers to their specific listing." *Id.* ¶ 21. Perhaps King means for the Court to look past the contract to other statements Teikametrics made, but he does not make that allegation, and the Court will not allege it for him.

Fourth, King fails to plead a claim of breach of the duty of good faith and fair dealing. Although every contract includes "an implied duty of good faith and fair dealing . . . that obligates the parties to cooperate with each other so that each may obtain the full benefit of performance[,]" it "requires only that the parties perform in good faith the obligations imposed by their agreement." *Badgett v. Sec. State Bank,*

807 P.2d 356 (Wash. 1991). It is not "free-floating." *Id.* King never identifies an obligation the Contract imposed and says Teikametrics performed it in bad faith. Without that, the duty has nothing to attach to.

Fifth, King claims Teikametrics breached the Video Contract by leaving sponsored brand video advertisements on William & Douglas's Amazon product listing after those products went out of stock or became unavailable from William & Douglas directly. But the record does not contain the contract term he says required removal, so the Court has no way to evaluate King's conclusory allegation of breach. Further, it's not clear that King seeks damages related to the Video Contract given that the supporting declaration accounts only for what William & Douglas paid "related to the Contract and Teikametrics' Amazon DSP management services." Dkt. No. 23  ¶¶ 8–9.

Sixth, King fails to plead an unjust enrichment claim. He alleges that given "Teikametrics' misrepresentations, deceit, and failure to disclose material facts affecting Teikamtrics' services' true value, Teikametrics' acceptance and retention of [William & Douglas's payments] would be inequitable under the circumstances." Dkt. No. 1 ¶ 91. Under Washington law, unjust enrichment "is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). Accordingly, "a party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express

ORDER DENYING DEFAULT JUDGMENT - 7

contract." *U.S. for Use & Benefit of Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1204 (9th Cir. 2002) (applying Washington law).

Because King relies on the contract terms as the basis for this claim it cannot also serve as the basis for an unjust enrichment claim. At this point, King does not allege or argue that the Contract is invalid. Rule 8(d)(2) does allow a plaintiff to plead in the alternative, but the rule contemplates genuine uncertainty about the contract's validity—not the assertion of duplicative claims resting on the same contractual premise. *Cf. Smith v. Legal Helpers Debt Resolution, LLC*, No. 11-5054 RJB, 2011 WL 5166494, at *9 (W.D. Wash. Oct. 31, 2011) (permitting unjust enrichment claim to proceed where plaintiff disputed the validity of the contract). King's claim is not an alternative to his contract theory. It is that theory a second time.

## 5. CONCLUSION

In sum, the Court DENIES King's motion for default judgment, Dkt. No. 21, without prejudice.


Dated this 17th day of July, 2026.

_____

Jamal N. Whitehead
United States District Judge

ORDER DENYING DEFAULT JUDGMENT - 8